IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SPECIALTY PRODUCTS INTERNATIONAL, LTD., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 1:04CV00699 ) |
| CON-WAY TRANSPORTATION SERVICES, INC., | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**SHARP, Magistrate Judge**

This matter comes before the Court on (1) a motion for summary judgment by Plaintiff Specialty Products International, Ltd. ("Specialty" or "Plaintiff") (Pleading No. 8) and (2) a motion in limine by Plaintiff seeking to exclude evidence of certain remedial measures taken after discovery of damage to two separate shipments of brew tanks. (Pleading No. 13.) The motions have been fully briefed and are ready for a ruling.

**Procedural Background**

This action involves four 150-gallon stainless steel beer brewing tanks ("brew tanks") that were damaged in connection with two separate cross-country shipments in May 2003. On June 9, 2004, Plaintiff filed a complaint in North Carolina Superior Court for Orange County seeking damages from Defendant Con-Way Transportation Services, Inc. ("Con-

Way" or "Defendant") under the Carmack Amendment, 49 U.S.C. § 14706, for a total loss of four brew tanks. On August 5, 2004, Defendant Con-Way removed the action to this Court based on federal question jurisdiction. (Pleading No. 1.) Defendant Con-Way answered the Complaint, denying most of Plaintiff's allegations. After a period of discovery, Plaintiff Specialty moved for summary judgment. (Pleading No. 8.) Defendant Con-Way opposed the motion, submitting evidence of certain packaging changes made by Specialty in support of its argument that Specialty, not Con-Way, was at fault for the loss. (Pleading No. 11.) Specialty then filed a motion in limine to exclude the evidence presented by Con-Way under Federal Rules of Evidence 407 and/or 403. (Pleading No. 13). Con-Way opposed the motion in limine. (Pleading No. 15.)

**Statement of Facts**[1]

Specialty is a North Carolina corporation in the business of providing specialty equipment and supplies, including triple-walled insulated stainless brew tanks, for use in restaurant beer micro-breweries. (Pleading No. 1, Compl. ¶ 6, attached to Notice of Removal.) Con-Way is a Delaware corporation and a motor carrier as defined under the relevant federal law. *Id.* ¶ 2; Pleading No. 3, Answer, ¶ 5.)

On or about May 7, 2003, Specialty contracted with Con-Way to deliver three brew tanks to the Provence Restaurant ("consignee") in Roseville, California. (Pleading No. 9, Pl.'s Br. in Supp. of Mot. for Summ. J., Ex. 3, Bill of Lading.) The brew tanks were in good

---

[1]Unless noted, the facts set forth herein are undisputed.

and undamaged condition when Con-Way accepted them in Erwin, North Carolina for shipment to California. *Id.*; Pleading No. 11, Def.'s Br. in Opp'n to Mot. for Summ. J., Dep. of Donald West ("West Dep.") at 12-19, 22-26, 56, 93. The inspection document describes the packaging of the brew tanks as follows: "Plastic wrap, foam blanket, straps and then a final wrap with a clear stretch wrap and bolted to wood skids." (Pl.'s Br., Ex. 1, Inspection Report.) With one exception, the tanks in the May 7, 2003 shipment were packaged for the trip from North Carolina to California in the same manner in which they had been shipped from Mexico to North Carolina. *Id.*, West Dep. at 12-13, 16-19, 24-26, 32-40, 53, 61. On May 13, 2003, Con-Way delivered the tanks to Roseville, California, where the consignee found that two of the tanks had been damaged. (Pl.'s Br., Ex. 1.) The damage consisted of dents to the lower edges and the conical bottoms of the brew tanks and cracks along the lower welded seams, with the protective foam torn at the damage points. *Id.* Exs. 1, 7, 13, 14; West Dep. at 93-94, Ex. 3; Pleading No. 10, Affidavit of E.E. Christensen, Jr. ("Christensen Aff.") ¶¶ 4, 5, 8, 9. The photographs also show some damage to the upper halves of the brew tanks. (Pl.'s Br., Exs. 13, 14.) The consignee claimed exception and rejected the shipment. *Id.*, Ex. 1.

On May 15, 2003, Specialty contracted with Con-Way to transport two replacement machines to the same consignee. (Pl.'s Br., Ex. 4, Bill of Lading.) The replacement brew tanks also were in good condition when delivered to Con-Way. *Id.*, West Dep. at 12-19, 22-26, 56, 93. These brew tanks were packaged as follows: "wrapped with foam, air cap [a

brand of bubble wrap] tied and bolted to pallets"and "a layer of clear plastic stretch wrap, layer of foam blanket, a layer of bubble wrap and then a final wrap of clear stretch wrap. Units bolted to wood skids." (Pl.'s Br., Exs. 2, 4.) Upon arrival in California, these two tanks were also discovered to have damage almost identical to the damage sustained by the two tanks in the first shipment. *Id.*, Ex. 2. The consignee again rejected the shipment. *Id.*, Exs. 2, 6.

Specialty again contracted with Con-Way to ship two replacement brew tanks to California. (Compl., Ex. 5.) On May 29, 2003, Specialty delivered two brew tanks to Con-Way in good condition, packaged as follows: "wrapped with foam, air cap shrink wrapped bolted to pallet tied down with rope and enclosed in plywood box." *Id.* The brew tanks arrived in California undamaged and were accepted by the consignee. (Christensen Aff. ¶ 7.)

Con-Way has offered the testimony of John Feltz and Warren Winner on the issue of shipper fault. On May 22, 2003, John Feltz, owner of Northern California Inspection Services, inspected the four damaged tanks. (Def.'s Br. in Opp'n., Affidavit of John Feltz ("Feltz Aff.") ¶ 4.) Mr. Feltz prepared an inspection report noting that the tanks were on pallets essentially the same dimension as the tanks, and "[i]t appears that units were bumped against at [the] edge by the fork blade uprights when forklift is entering up against pallet especially when the end top deck board is missing or not on pallet and forklift hits against tank before it hits pallet boards." (Pl.'s Br., Ex. 7.) In his affidavit, Mr. Feltz opines that

-4-

the situation could have been corrected by placing the tanks on larger skids and enclosing the tanks in some type of plywood box. (Def.'s Br. in Opp'n, Feltz Aff. ¶¶ 5, 7.) After Specialty filed this lawsuit, Con-Way retained Mr. Warren Winner, a cargo damage consultant, to review the case and to offer his opinion on causation. *Id.*, Deposition of Warren Winner ("Winner Dep.") at 23-25. Mr. Winner performed no independent examination of the damaged tanks and did not interview any witnesses involved in the handling of the freight, but instead based his report on documents, including photographs, already gathered in the case and an examination of similar brew tanks. Mr. Winner has been in the cargo inspection business since 1973 but has never previously dealt with brew tanks. (Pl.'s Br., Ex. 9; Winner Dep. at 12, 38.) He opines that the damage was caused by improper packaging by the shipper. *Id.*; Winner Dep. at 59. In his opinion, the tanks should have been secured to runners the perimeter of which extended at least six inches beyond the tank, and the tanks should have been enclosed in a solid surface crate or container to prevent contact between the forklift blades and the brew tanks. *Id.* Ex. 9; Winner Dep. at 59-61. In his opinion, "[t]he primary cause of damage is the lack of side protection to prevent contact with other freight and against the normal hazards of transportation." *Id.*, Ex. 9 at 6. Both of Con-Way's experts also rely on the uneventful third shipment as evidence that the tanks should have been crated initially.

Specialty alleged in its unverified complaint that, in the course of arranging return shipment of the four damaged brew tanks, Specialty's President, Leigh Beadle, spoke with

an employee of Con-Way. (Pleading No. 1, Compl. ¶ 14.) According to Mr. Beadle, that employee told him that another Con-Way employee, a forklift operator in Con-Way's Charlotte warehouse, caused the damage to the brew tanks. *Id.* According to the Con-Way employee, the Con-Way forklift operator attempted to lift the brew tanks by positioning the forklift blades under the bottom of the brew tanks instead of sliding them under the pallet. *Id.*[2] Specialty also has filed the Affidavit of E.E. Christensen, Jr., construction manager for the company that owns and operates the Provence Restaurant in Roseville, California. (Pleading No. 10, Christensen Aff.) Mr. Christensen saw and inspected the damaged brew tanks in California but does not purport to have any special expertise in cargo packaging or handling. He nonetheless opines that "the damage to the bottoms of the brew tanks could have occurred only by physical contact of the brew tank bottoms with another object, such as by striking the brew tanks with forklift blades on the tanks directly." *Id.* ¶ 11.

Plaintiff has submitted evidence indicating that the brew tanks cost $5,455.00 each, for a total of $21,820.00. (Pl.'s Br., Ex. 10.) In addition, Specialty claims the lost value of eight damaged fittings, four of which are valued at $380.00 each and four of which are valued at $95.00 each, for a total of $1,900.00. *Id.* Ex. 11; Pleading No.11, Deposition of Leigh Beadle ("Beadle Dep.") at 36.) Finally, Specialty seeks to recoup the shipping charges it paid Con-Way, totaling $2,057.99. (Pl.'s Br., Ex. 12; Beadle Dep. at 34.) The total damages sought are $25,777.99.

---

[2]This assertion was not explored in Mr. Beadle's deposition.

Specialty made demand on Con-Way for the amount of its loss. (Pleading No. 1, Compl. ¶ 15.) Con-Way denied liability and refused to pay. *Id.* ¶¶ 16 and 17. This litigation followed.

**Discussion**

**I.     Motion in Limine**

In its brief in opposition to Specialty's motion for summary judgment, Con-Way argues that Specialty adopted additional measures to ensure protection of its product during the third shipment, which arrived undamaged, and that this serves as evidence that "the packaging of the first two shipments by Plaintiff was insufficient and proper packaging was feasible and in the exclusive province of Plaintiff." (Pleading No. 11, at 5.) Specialty has filed a motion in limine seeking exclusion of this evidence under Federal Rules of Evidence 407 and/or 403 for purposes of the summary judgment motion and all further proceedings in this matter. (Pleading No. 13.)

Rule 407 of the Federal Rules of Evidence directly addresses the admissibility of subsequent remedial measures. According to Rule 407,

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407 (2001 & Supp. 2004).

The evidence relied on by Con-Way is precisely the type of evidence that Rule 407 is meant to exclude. Nevertheless, Con-Way makes three arguments in favor of admission of the evidence. First, Con-Way argues that the remedial measures taken in this case – the repackaging with bubble wrap (for the second shipment) and the crating (for the third shipment) – occurred before, not after, the event. According to Con-Way, the "event" for purposes of this case was the shipment of the tanks to California, which was an ongoing process, not a singular moment. The Court rejects this argument. The language of Rule 407 excludes evidence of measures taken " after an injury or harm allegedly caused by an event." Fed. R. Evid. 407. The Advisory Committee's notes to Rule 407 direct the court to consider the "event" as being the occurrence of injury. *Id.,* advisory committee's note, 1997 amendments. The Fourth Circuit authority cited by Con-Way is not to the contrary. *See Chase v. General Motors Corp.*, 856 F.2d 17, 21 (4th Cir. 1988) (excluding evidence of automobile recall in products liability action based on faulty brake design, but admitting evidence of changes in brake design that were made before plaintiff's accident); *see also Werner v. Upjohn Co.*, 628 F.2d 848, 857-58 (4th Cir. 1980) (applying rule in both negligence and strict liability actions, policy of rule being to encourage remedial measures). Here, an injury occurred each time a shipment arrived in California in a damaged condition. Thus, Con-Way may not use evidence of bubble wrap after the first shipment to show shipper negligence in connection with the first shipment or evidence of use of a box after the second shipment to show shipper negligence in connection with the second shipment.

-8-

Case 1:04-cv-00699-PTS   Document 16   Filed 01/13/06   Page 8 of 16

Con-Way also argues that it relies on evidence of subsequent measures in order to show the feasibility of precautionary measures and plaintiff's control over the shipment. However, Rule 407 allows such alternate uses of subsequent measures only where feasibility and/or control is disputed. At least at this stage, there is nothing to suggest that these issues are in controversy. Accordingly, the exception to Rule 407 does not apply, at least for purposes of this summary judgment motion. Should Specialty place these issues in controversy at the time of trial or offer evidence that would open the door to using subsequent measures as impeachment evidence, the Court's ruling may change.

In sum, then, in ruling on the motion for summary judgment, the Court will not consider evidence of remedial measures taken subsequent to the first and second shipments that would have made the harm less likely to occur during the first two shipments.

## II. Motion for Summary Judgment

The summary judgment standard of review under Rule 56 of the Federal Rules of Civil Procedure is well established. A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it

would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

Specialty moves for summary judgment on its claim under the Carmack Amendment. The Carmack Amendment makes motor carriers liable as virtual insurers for loss or damage to the goods they transport. *See* 49 U.S.C. § 14706 (a) (1) (1997 & Supp. 2005) (amending and recodifying 49 U.S.C. § 11707(a)(1) (1994)). Claims under the Carmack Amendment are decided under a special burden-shifting scheme. A shipper first must establish a *prima facie* case, which consists of showing (1) delivery of the goods in good condition; (2) arrival in damaged condition; and (3) the amount of damages. *See Missouri Pac. R.R. Co. v. Elmore*

-10-

*& Stahl*, 377 U.S. 134, 137-38 (1964); *Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 294 (4th Cir. 1990). Once the shipper establishes its *prima facie* case, the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability, such as (a) an act of God, (b) an act of the public enemy, (c) the act of the shipper himself, (d) public authority, or (e) the inherent vice or nature of the goods. *Missouri Pac. R.R.*, 377 U.S. at 137, 144; *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 139-40 (4th Cir. 2000). It is well settled that in order to bring itself within the stated exception to liability by reason of the act or omission of the shipper, the carrier must show affirmatively not only the fault of the shipper, but also that such fault was the sole proximate cause of the loss or failure to deliver. *Schnell v. The Vallescura*, 293 U.S. 296, 305 (1934). Although this rule seems harsh, "[t]he general rule of carrier liability is based upon the sound premise that the carrier has peculiarly within its knowledge [a]ll the facts and circumstances upon which [it] may rely to relieve [it] of [its] duty." *Missouri Pac. R.R.*, 377 U.S. at 143 (citation and internal quotation marks omitted).

Specialty has met its burden of showing delivery in good condition by producing copies of the bills of lading and the testimony of Donald West. (Pl.'s Br., Exs. 3, 4, West Dep. at 93.) This appears to be undisputed. Specialty has also shown that the tanks arrived in damaged condition and the amount of those damages. (Pl.'s Br., Exs. 13, 14; Christensen Aff. ¶¶ 4-10.) This, too, appears to be undisputed.

-11-

Because the shipper, Specialty, has produced sufficient evidence to establish its *prima facie* case, the burden shifts to the carrier, Con-Way, to show that it was free from negligence and that the damage to the cargo was due solely to one of the excepted causes recognized under the Carmack Amendment. Con-Way hinges its defense on shipper fault, arguing that if Specialty had placed the tanks in plywood boxes for the first and/or second shipment, the tanks would have survived the cross-country trip. One piece of evidence relied on by Con-Way to show shipper fault is the successful use of plywood boxes during the third shipment. As discussed above, Federal Rule of Evidence 407 prohibits the use of this evidence to establish negligence or fault and, at least on this motion, there is no controverted issue of feasibility or control that would bring the evidence under an exception to the general exclusionary language of Rule 407.

Con-Way also offers two expert opinions that the packaging used by the shipper for the first two shipments was inadequate to protect the tanks from damage and that the tanks should have been placed on larger pallets and surrounded by plywood. While neither expert excludes the possibility of carrier mishandling as a cause of the damage, they maintain that Specialty had a duty to package the cargo differently than it did for the first and second shipments, but failed to do so, and that the negligent packaging ultimately was the sole cause of the loss. Con-Way attempts to analogize this case to the Fourth Circuit case of *South Carolina Asparagus Growers' Ass'n v. Southern Ry. Co.*, 46 F.2d 452 (4th Cir. 1931).

In *South Carolina Asparagus Growers*, the plaintiff entered into a shipping contract with Southern Railway Company for transportation of a refrigerator car load of fresh asparagus from Williston, South Carolina to Philadelphia, Pennsylvania. Upon the opening of the car in Philadelphia, the asparagus was found to be in very bad condition, and the consignee rejected the shipment. Following trial, the judge directed verdict precluding recovery against the carrier. According to the court, the evidence unequivocally showed that the cause of the damage was inadequate air circulation and that this, in turn, was caused not by the carrier's failure to keep the car at the right temperature, but by the shipper's negligent loading of the crates too close together. The shipper had expressly assumed responsibility under the bill of lading for loading the asparagus and therefore it, not the carrier, was liable for the loading deficiencies. *Id.* at 454-55. The present case appears distinguishable in some respects from *South Carolina Asparagus Growers*. In *South Carolina Asparagus Growers*, the shipper loaded the cargo, had the duty to do so, the regulations specifically required spacing of the crates to allow ventilation, the shipper did not follow the regulations, and there was no proof that the carrier failed to keep the car at the required temperature. The forecast of evidence in this case presents a materially different set of factual circumstances. It is unclear whether the shipper assumed the duty of packaging the cargo in the manner suggested by Con-Way. The position of Con-Way's expert appears to be that the standards set forth by the National Motor Freight Traffic Association do not specifically address the

-13-

type of cargo involved in this case, but that under industry practices a reasonable shipper would have boxed the tanks. (Pl.'s Br., Ex. 9.)

On the other hand, Plaintiff Specialty attempts to analogize the case to a Seventh Circuit case, *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.,* 325 F.3d 924 (7th Cir. 2003). That case involved a shipment of cigars that were found to be damaged upon arrival at their destination. *Id.* at 927-28. The cigars were wet and crushed and there was evidence that water had entered the truck through a seam on the left side of the truck. *Id.* The carrier attempted to show shipper fault by arguing that the cigars would not have been damaged if they had been placed in something other than cardboard boxes. *Id.* at 930. Following a bench trial, the court entered judgment for the shipper, finding that the shipper had established a *prima facie* case and that the carrier had failed to produce sufficient evidence to rebut the presumption of liability. *Id.* at 928, 930. According to the court, the record showed that the shipper had received "millions of cigars packaged in the same manner that were undamaged" and that even if the cardboard boxes "contributed to the extent of the damage once the cartons were wet . . . in order to rebut the *prima facie* case, Yellow Freight must also show that it was not negligent. It cannot make that showing." *Id.* at 930. The Court of Appeals upheld this ruling. *Id.*

The *Yellow Freight* case is also distinguishable from this case in certain respects. In *Yellow Freight*, the cause of the damage – a leak in the truck that allowed water in – was virtually undisputed. Here, the nature of the damage certainly suggests carrier mishandling

-14-

and even the carrier's experts appear to acknowledge that the damage occurred while the cargo was in the carrier's possession. However, whereas in *Yellow Freight*, "millions" of cigars had been shipped in cardboard boxes without consequence, the history here is not entirely clear on the record before the Court. It appears that, with some exceptions, the tanks were packaged for the first shipment to California in the same manner in which they were packaged for the trip from Mexico to North Carolina (bolted and strapped to pallets, wrapped with foam and plastic), and that they made the trip from Mexico to North Carolina intact. (West Dep. at 12-19, 24-26, 32-40, 53, 61.) Another relevant distinction between this case and *Yellow Freight* is the nature of the cargo. The parties have not addressed to the Court's satisfaction the extent to which the cargo's aesthetic function (stainless steel tanks exposed to customer viewing in a restaurant) should inform the duty placed upon the shipper to protect the cargo from foreseeable handling, or the extent to which a carrier has a duty to object to inadequate packaging before it accepts a load. There is no evidence on the current record indicating that the carrier objected to the packaging before loading the cargo or that it attempted to disclaim or limit its liability in connection with either the first or second shipment.

While district courts both in and outside this Circuit have often granted summary judgment to shippers in Carmack cases, *cf. Duck Head Footwear v. Mason & Dixon Lines, Inc.*, 41 Fed. Appx. 692, 699 n.10 (4th Cir. 2002) (unpublished) (upholding summary judgment for shipper based on *prima facie* case and failure of carrier to establish absence

of negligence on its part); *Mach Mold, Inc. v. Clover Associates, Inc.*, 383 F. Supp. 2d 1015, 1031 (N.D. Ill. 2005), this Court finds that the carrier here has produced sufficient admissible evidence to create a genuine dispute of material fact for trial.

## Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff Specialty Products International, Ltd.'s motion in limine (Pleading No. 13) be **GRANTED** and that evidence of subsequent remedial measures is inadmissible for purposes of establishing shipper fault in connection with the shipments of brew tanks. **IT IS FURTHER ORDERED** that Plaintiff Specialty Products International Ltd.'s motion for summary judgment (Pleading No. 8) be **DENIED**. The case will be set on for a bench trial during the Court's civil calendar in May 2006.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: January 13, 2006